Mariam MOHAMMADIAN, Plaintiff

v.

CIBA VISION OF PUERTO RICO,
INCORPORATED, Defendant.

Civil No. 03–1276 (JAG).

United States District Court,
D. Puerto Rico.

July 19, 2005.

Jose F. Quetglas, Quetglas Law Office, San Juan, PR, for Plaintiff.

Javier G. Vazquez–Segarra, Goldman Antonetti & Cordova, San Juan, PR, for Defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On March 13, 2003 Mariam Mohammadian ("Mohammadian") filed a complaint against her former employer Ciba Vision of Puerto Rico, Inc. ("Ciba") pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 1201 ("ADA"), the Civil Rights Act of 1964, 42 U.S.C. § 1981a,[1] as well as supplemental state law claims (Docket No. 1). Mohammadian alleges that she is a qualified disabled individual under the ADA; that Ciba failed to provide her with reasonable accommodation as required by the ADA; that Ciba subjected her to a disability-based hostile

---

1. This statute creates a cause of action for compensatory and punitive damages for viola- tions to, *inter alia,* the ADA.

working environment; and that she was wrongfully discharged due to her disability.

On April 29, 2004, Ciba moved for summary judgment, alleging that Mohammadian's complaint lacks merit because she does not qualify as a disabled individual under the ADA; because she received the accommodation she requested; and because it terminated her employment due to her poor work performance and not her disability (Docket No. 11). On June 30, 2004, Mohammadian opposed Ciba's motion (Docket No. 22). On December 4, 2004, the Court referred Ciba's motion to Magistrate–Judge Camille L. Velez–Rive for a Report and Recommendation (Docket No. 50). On March 4, 2005, Magistrate–Judge Velez–Rive recommended that Ciba's motion be denied because she found that there are genuine issues of material facts that prevent the entry of summary judgment. On March 18, 2005, both parties filed objections to the Report and Recommendation (Docket Nos. 51, 52). On April 11, 2005, Mohammadian responded to Ciba's objections (Docket No. 58). For the reasons below, the Court **REJECTS** the Magistrate–Judge's Report and Recommendation and **GRANTS** Ciba's motion for summary judgment.

## FACTUAL BACKGROUND[2]

Since January 2000, Mohammadian worked as Human Resources Supervisor for Wesley Jessen of P.R., Inc. ("Wesley Jessen"). In January 2001, Ciba acquired Wesley Jessen. Mohammadian reported directly to Ms. Wanda Hernandez ("Hernandez"). From May 15 to July 9 of 2001, Mohammadian took a maternity leave. Upon returning to work, she was absent or late on certain occasions, suffered seizures or blackouts, and took a sick leave of ab-

sence for several months. In October or November of 2001, Mohammadian was diagnosed with major depression. She informed Ms. Hernandez of her depression at around this time.

On February 26, 2002, Ciba terminated Mohammadian's employment. Mohammadian alleges that Ciba fired her due to her disability, and because her performance at work had deteriorated as a result of the hostile work environment she suffered at Ciba. She alleged that Hernandez reprimanded her in front of colleagues; supervised her to the point of "persecution"; did not invite her to lunches with colleagues; made insulting references to her mental health problems such as "that depression is killing you!", "you have to laugh", and "you are crazy, it shows"; and often commented negatively on her appearance. Ciba denied these allegations and stated that it fired Mohammadian because of her recurrent tardiness, her inability to get along with colleagues, including occasional temper tantrums, and her decreased performance at work.

## DISCUSSION

A. *Standard for Reviewing a Magistrate–Judge's Report and Recommendation*

A District Court may refer a pending motion to a U.S. Magistrate–Judge for a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 72(a). Pursuant to Fed.R.Civ.P. 72(b) and Local Rule 72(d), the adversely affected party may contest the Magistrate–Judge's Report and Recommendation by filing written objections "[w]ithin ten days of being served" with a

---

2. The relevant facts are taken from the Magistrate–Judge's Report and Recommendation

(Docket 50).

copy of the order. *See* 28 U.S.C. § 636(b)(1). Since both parties have filed timely objections to the Magistrate–Judge's Report and Recommendation, the Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. *See United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

**B.** *Summary Judgment Standard*

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52. (1st Cir.2000). Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of a scintilla of evidence" is insufficient to defeat a "properly supported motion for summary judgment." *Id.* at 252, 106 S.Ct. 2505. Rather, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir

.1994). In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990).

**C.** *Ciba's Motion for Summary Judgment*

**1.** *Mohammadian's ADA Claims*

The ADA proscribes employers from discriminating against "qualified disabled individuals". 42 U.S.C. § 12112(a). A disability is (1) a physical or mental impairment which substantially limits one or more of an individual's major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment. A qualified disabled individual is one who is qualified and able to "perform the essential functions" of the relevant employment with or without reasonable accommodation. 42 U.S.C. § 12111(8).

**a.** *Disability under the ADA*

Mohammadian contends that she is considered disabled under the ADA because her depression is of such severity that it impairs three major life activities: sleeping, working, and interacting with others. The Magistrate–Judge did not find her disabled as far as working and interacting with others, but stated that because some issues of material facts remained as to the activity of sleeping, the Court should not grant Ciba's motion for summary judgment on Mohammadian's disability. In its objections to the Report and Recommendation, Ciba stated that Mohammadian's sleep problems were neither severe nor caused by her depression, citing to her testimony that her sleep problems had worsened after she was fired, and had improved with medication.

Mohammadian replied that Ciba relied on testimony taken out of context.

Because this Court must examine facts in the light most favorable to the non-moving party, the Court concurs with the Magistrate–Judge's finding that a genuine issue of fact exists regarding whether Mohammadian qualifies as disabled or not. Qualifying as a disabled individual, however, is merely the first requirement that enables Mohammadian to bring a claim under the ADA; she still must have a viable cause of action. Since this Court finds that her causes of actions are untenable, as explained below, it is immaterial whether Mohammadian is disabled under the ADA; even if she is, Ciba's motion for summary judgment must be granted.

### b. *Reasonable accommodation.*

██ The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless this would pose "undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A). This duty is limited by the use of the word "reasonable". This means that employers are not required to provide every accommodation desired by employees, even if the accommodation is not burdensome; the employer has met his statutory duty when he accommodates his disabled employee to the extent necessary for her to be able to perform her job. *Stewart v. County of Brown,* 86 F.3d 107, 110–11 (7th Cir.1996).[3] The parties' respective burdens regarding reasonable accommodation are well established in the First Circuit. The plaintiff has the burden to show that she proposed an accommodation that enabled her to perform her job, and that was feasible for the employer.

*Kvorjak v. Maine,* 259 F.3d 48, 55 (1st Cir.2001). It then becomes the employer's responsibility to explain why such an accommodation might be unduly burdensome. *Reed v. LaPage Bakeries,* 244 F.3d 254, 257–259 (1st Cir.2001).

In this case, the Magistrate–Judge noted in her report that there are questions of fact regarding whether Ciba provided Mohammadian with reasonable accommodation: specifically, whether Ciba knew of Mohammadian's depression and should have provided her with an accommodation. Ciba stated in its objections that it granted Mohammadian's requests, including a leave of absence and time off work to visit her psychiatrist. Mohammadian, on the other hand, argued that the requests were granted grudgingly; that subsequent work pressures prevented her from seeing her psychiatrist; and that she told her supervisor about her depression and difficulty sleeping and that "obviously, this meant . . . the need to accommodate her sleeping disorder" (Docket No. 58 at 5).

██ Ciba certainly could have chosen to provide Mohammadian with additional, unrequested accommodation, such as a more flexible time schedule. It is not, however, legally required to do so. The employer has a duty to respond to requests for reasonable accommodation, but it is the employee's responsibility to make the request. In this case, where Mohammadian demonstrated that she was capable of requesting accommodation, there is no reason to impose a new and added burden on the employer. Thus, because Ciba granted the accommodation that Mohammadian requested, it met its statutory duty towards her.

---

3. Reasonable accommodation includes "job restructuring, part-time or modified work schedule, reassignment to a vacant position . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

■ Likewise, the allegations that Ciba granted requests in a grudging manner, and that later work pressures made it difficult for Mohammadian to keep seeing her psychiatrist, even if true, do not create a triable issue of fact. Employers are required to grant requests for accommodation, but not to do so in a supportive fashion. Even assuming that Mohammadian's facts are all true, no reasonable jury could find that Ciba had not met its statutory duty to provide reasonable accommodation. Thus, because Mohammadian has failed to establish a cause of action under the ADA, this Court must grant summary judgment as to this claim.

### c. Hostile Working Environment

To date, the First Circuit has not directly addressed the issue of whether a plaintiff can bring a hostile working environment claim under the ADA. Some courts have assumed, without deciding, that plaintiffs can bring hostile working environment claims under the ADA, but have granted defendants summary judgment for lack of factual substance. *See Rodriguez v. Loctite of Puerto Rico, Inc.*, 967 F.Supp. 963 (D.P.R.1997); *Gunderson v. Neiman–Marcus Group, Inc.* 982 F.Supp. 1231 (N.D.Tex.1997). Others have found that such an action indeed exists under the ADA but nevertheless granted summary judgment for lack of factual support. *See Miller v. Taco Bell Corp.*, 204 F.Supp.2d 456 (E.D.N.Y.2002); *May v. Roadway Express Inc.*, 221 F.Supp.2d 623 (D.Md.2002). The Court will not analyze here whether such a cause of action exists because, even assuming *arguendo* that it does, Mohammadian's facts fail to support such a claim.

■ In their rulings on hostile work environment under the ADA, courts have adopted the standard set forth by *Harris v. Forklift*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), for Title VII claims, requiring plaintiffs to prove that their workplace was "permeated with insult, ridicule, and intimidation". Occasional insulting comments and behavior, no matter how hurtful, are insufficient to support a claim of hostile work environment. *Id.* at 21, 114 S.Ct. 367. To successfully establish a prima facie claim of hostile working environment under the ADA, the plaintiff must therefore prove that (1) she is a qualified individual with a disability; (2) she was subjected to harassment; (3) that the harassment was based on her disability; (4) that the harassment was so severe or pervasive that it altered the condition of employment; and (5) that the harassment may be imputed to the employer. *See Fox v. General Motors Corp.*, 247 F.3d 169 (4th Cir.2001).

■ Courts have granted summary judgment on such claims because the comments and behavior alleged by plaintiffs failed to be so pervasive or severe as to alter the conditions of their employment and therefore constitute an adverse employment action by employer. This applies equally to cases involving disabilities due to mental impairment as to cases of physical impairment. *See Henry v. Guest Services, Inc.*, 902 F.Supp. 245 (D.D.C. 1995) (holding that coworkers' cartoon ridiculing plaintiff's depression does not support a hostile work environment claim); *McClain v. Southwest Steel Co.*, 940 F.Supp. 295 (N.D.Okla.1996)(holding that calling an employee with mental health issues names like "crazy", and "lunatic" did not suffice to create a hostile work environment).

In this case, assuming without deciding that a hostile work environment claim can be brought under the ADA, Mohammadian's facts even if true are insufficient to support her claim. The statements she complains of may be inappropriate, but do not reach the level of offense required by

*Harris.* Therefore, the Court must grant Ciba's motion for summary judgment as to this claim.

### d. *Discriminatory Discharge.*

To establish a *prima facie* case of discriminatory discharge under the ADA, a plaintiff must prove that she is (1) a disabled individual, (2) capable of performing the essential functions of her job with or without reasonable accommodation, and (3) suffered adverse employment action because of her disability. *See Epps v. City of Pine Lawn,* 353 F.3d 588 (8th Cir.2003); *Giordano v. City of New York,* 274 F.3d 740 (2nd Cir.2001). Where the evidence of discrimination is circumstantial rather than direct, a plaintiff retains the burden of proof under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must prove her case through a preponderance of the evidence, at which point the employer must articulate a legitimate, non-discriminatory reason for the termination. The plaintiff then has the final burden to show that the reason given by the employer is merely a pretext for discrimination.

In this case, the Magistrate–Judge found that there was a material issue of fact as to whether Mohammadian's dismissal was the result of discrimination stemming from her disability. Ciba objected to this finding, arguing that it fired Mohammadian for her tardiness, tantrums, and poor work performance. Mohammadian replied that her problems at work were due to her disability, and in the alternative, that Ciba caused a hostile environment in which she could not perform. Mohammadian's first argument is self-defeating: if her decreased work performance is due to her depression, then she cannot prove the second element required to establish a *prima facie* case of discrimination: that she can perform the essential components of her work. Second, Mohammadian's argument that her work performance deteriorated because Ciba created a hostile work environment also fails, because as the Court already found, the conditions Mohammadian described do not amount to the level of hostile work environment. Thus, neither argument enables Mohammadian to establish a *prima facie* case of discrimination.

Even if Mohammadian had established a *prima facie* case of discrimination, she failed to meet her burden under the *McDonnell Douglas* framework. Once Ciba offered a legitimate, non-discriminatory reason for firing Mohammadian, Mohammadian had the burden of proving that these reasons were pretextual. Instead of demonstrating that Ciba's decision to fire her was motivated by discriminatory animus and not based on her decreased work performance, Mohammadian's arguments merely attempted to explain why her performance at work had decreased. Mohammadian, therefore, fails to meet the burden of proving that Ciba's acts were discriminatory. Thus, the Court must also grant summary judgment on Mohammadian's discriminatory discharge claim.

### 2. *State Law Claims*

Since no federal claims to ground jurisdiction remain in this case, plaintiff's supplemental state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the reasons stated above, the Court **REJECTS** Magistrate–Judge Velez–Rive's Report and Recommendations, and **GRANTS** the Motion for Summary Judg-

ment by Defendant Ciba. Judgment shall enter accordingly.

IT IS SO ORDERED.